UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
———————————————————————X
ANGEL L. MANGUAL and JENNY MANGUAL

         Plaintiffs,

  -against-

ALEX MORRIS PLEAS, JR. and
MISS LYNDSAY TRUCKING
         Defendants.
———————————————————————X

02 Civ. 8311 (CBM)

MEMORANDUM OPINION
AND ORDER

**APPEARANCES:**

**For Plaintiffs:**

 Scott C. Perez
 William Pagan & Associates, P.C.
 New York, NY

**For Defendants:**

 Martin J. Semel
 Molod Spitz DeSantis & Stark, P.C.
 New York, NY

**MOTLEY, J.**

Defendants move for summary judgment, arguing that plaintiff has not sustained serious injury under New York State Insurance Law. For the reasons stated below, the motion is **DENIED**.

## I. BACKGROUND

On June 25, 1999, plaintiff Angel Mangual was a passenger in his mini-van operated by his son, Frankie Mangual, when there was a collision between his vehicle and an eighteen wheel tractor trailer operated by defendant Alex Morris Pleas, Jr., and owned by Pleas's business, defendant Miss Lindsay Trucking. The collision took place at approximately 10:00 p.m. after the parties had crossed the George Washington Bridge at the intersection of the Cross Bronx Expressway and the Major Deegan Expressway. Dep. of A. Mangual, at 18-22.

1

According to plaintiff Mangual, his vehicle was traveling in the right lane of traffic immediately in front of defendant Pleas's tractor trailer. Dep. of A. Mangual, at 24-26. As defendant Pleas passed Mangual's vehicle and entered into the left lane, defendant's right front bumper made contact with the left rear portion of Mangual's vehicle, pushing it to the right. Id. The Mangual vehicle was moving at the time of contact and it continued to travel without stopping even after the collision. Id. By contrast, defendant Pleas avers that he was driving in the middle lane of traffic when Mangual's vehicle, in an attempt to pass defendant, shot in front of him and sideswiped the right front of Pleas's vehicle with the left rear of Mangual's vehicle. Dep. of A. Pleas Jr., at 29-36.

The police accident report reflects the dispute between the parties, stating that Mangual alleged that defendant Pleas's vehicle hit the rear of his vehicle when all of the Expressway's lanes merged into one lane, while Pleas maintained that the Mangual vehicle cut Pleas off and hit Pleas. Pl.'s Ex. G. The report identifies the point of impact and most of the damage as occurring along the rear lefthand side panel of plaintiff's vehicle. Id. The report also includes a diagram depicting the two vehicles at an approximately 130 degree angle, with the Mangual vehicle angled in front of the Pleas vehicle and the Pleas vehicle traveling straight-on. The Mangual vehicle appears to be merging from the right, with its path into Pleas's lane guided by traffic cones along the right side of the roadway. Id. According to the diagram, the point of contact between the two vehicles is the right front of the Pleas vehicle with the rear left side of Mangual's vehicle. Id.

After the accident, plaintiff received chiropractic therapy for nine months due to alleged accident-related injuries in his neck and back. Dep. of A. Mangual, at 44-48; Pl.'s Ex. H. He settled his claim against Frankie Mangual for $20,000 in March of 2001. Def.'s Ex. 1. In June of 2002, plaintiffs Angel Mangual and his wife Jenny Mangual filed this action against defendants. They charge defendants with negligence and seek damages in the amount of two million dollars for Angel Mangual's injuries and five hundred thousand dollars for Jenny Mangual for loss of companionship, services, and expenditures stemming from the collision. Pl.'s Ex. A.

On July 31, 2003, plaintiffs moved for partial summary judgment on the issue of liability on the grounds that 1) plaintiff Angel Mangual was an innocent passenger at the time of the accident, and 2) defendant Pleas rear-ended plaintiff Angel Mangual's vehicle and is therefore presumed liable. Plaintiffs further averred that because Jennie Mangual had a derivative claim, she is also entitled to summary judgment on the issue of liability. On April 6, 2004, plaintiffs' motion for partial summary judgment was denied because there remained material issues of fact as to the nature of the collision.

Defendants thereafter moved for summary judgment on June 15, 2004, and that motion is presently before the court.

## II. SUMMARY JUDGMENT STANDARD

Under Fed. R. Civ. P. 56(c), summary judgment "shall be rendered forthwith" if it is shown that "there is no genuine issue of material fact and that the moving party is entitled to a

2

judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 323 n. 4, 106 S.Ct. 2548, 2552 n. 4 (1986). "[G]enuineness runs to whether disputed factual issues can reasonably be resolved in favor of either party, [while] materiality runs to whether the dispute matters, i.e., whether it concerns facts that can affect the outcome under the applicable substantive law." Mitchell v. Washingtonville Cent. Sch. Dist., 190 F.3d 1, 5 (2d Cir. 1999) (internal quotations and citations omitted). In order to prove that a genuine issue of material fact exists, a plaintiff "may not rest upon the mere allegations or denials of the pleading[s]," but must by affidavit or otherwise "set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e). "Conclusory statements, conjecture or speculation by the party resisting the motion will not defeat summary judgment." Kulak v. City of New York, 88 F. 3d 63, 71 (2d Cir. 1996).

Courts must resolve all ambiguities and draw all reasonable factual inferences in favor of the non-moving party. See Nora Beverages, Inc. v. Perrier Group of Am., Inc., 164 F.3d 736, 742 (2d Cir. 1998). The moving party bears the initial burden of demonstrating an absence of genuine issues of material fact. See Schwapp v. Town of Avon, 118 F.3d 106, 110 (2d Cir. 1997). If the initial burden is met, the non-moving party "must produce specific facts indicating that a genuine issue of fact exists. If the evidence [presented by the non-moving party] is merely colorable, or is not significantly probative, summary judgment may be granted." Scotto v. Almenas, 143 F.3d 105, 114 (2d Cir. 1998) (internal quotations and citations omitted) (alteration in original).

## III. ANALYSIS

### A. New York Insurance Law[1]

Defendants argue that the injuries plaintiffs claim to have sustained are not sufficiently "serious" within the meaning of § 5102 of the New York State Insurance Law, commonly known as New York's No-Fault Insurance Law.

The purpose of New York's No-Fault Insurance Law is to promote prompt resolution of injury claims, limit cost to consumers and alleviate unnecessary burdens on the courts. Pommells v. Perez, 2005 N.Y. LEXIS 1041, *1-2 (Apr. 28, 2005) (citing the Comprehensive Automobile Insurance Reparations Act, L 1973, ch 13; Governor's Mem. Approving L 1973, ch 13; 1973

---

[1] Because this court is sitting in diversity, it must apply the choice of law rules of the forum state, New York. Klaxon Co. v. Stentor Elec. Mfg. Co., Inc., 313 U.S. 487, 496-497 (1941). Under New York law, in tort cases "the law of the jurisdiction where the tort occurred will generally apply because that jurisdiction has the greatest interest in regulating behavior within its borders." Brink's Ltd. v. South African Airways, 93 F.3d 1022, 1031 (2d Cir. 1996) (quoting Cooney v. Osgood Machinery, Inc., 81 N.Y.2d 66, 72 (N.Y. 1993)). Accordingly, New York law applies to this tort action. Moreover, since neither party has raised any choice of law issues, it can be said that they have consented to the application of the forum state's law. Clarkson Co. Ltd. v. Shaheen, 660 F.2d 506, 512 n. 4 (2d Cir. 1981).

McKinney's Session Laws of NY, at 2335). Injured parties are compensated under car owners' insurance policies for "basic economic loss" resulting from the use or operation of that vehicle in New York State, without regard to fault. Id. at *2. In order to recover against the car owner or driver for non-economic loss, the injury must be defined as "serious." N.Y. INS. LAW § 5104 (Consol. 2005). "Serious injury" is defined as a personal injury that results in:

> death; dismemberment; significant disfigurement; a fracture; loss of a fetus; permanent loss of use of a body organ, member, function or system; permanent consequential limitation of use of a body organ or member; significant limitation of use of a body function or system; or a medically determined injury or impairment of a non-permanent nature which prevents the injured person from performing substantially all of the material acts which constitute such person's usual and customary daily activities for not less than ninety days during the one hundred eighty days immediately following the occurrence of the injury or impairment.
>
> N.Y. INS. LAW § 5102 (Consol. 2005).

The issue of whether plaintiff has sustained such an injury under the statute is a threshold issue for the court to decide. Licari v. Elliott, 57 N.Y.2d 230, 236, 441 N.E.2d 1088, 455 N.Y.S.2d 570 (1982). The initial burden lies with the defendants, on summary judgment, to establish that plaintiff has not sustained a serious injury as defined in § 5102. Tarnopolsky v. Sanchez, 2002 U.S. Dist. LEXIS 20588, *6-7 (S.D.N.Y. Sept. 27, 2002). To meet their burden, defendants must show, through submission of competent medical evidence, i.e., affidavits or affirmations, that the plaintiff did not suffer a serious injury causally related to the accident. John v. Engel, 2 A.D.3d 1027, 1028, 768 N.Y.S.2d 527 (2d Dep't 2003). If defendants meet this burden, the burden then shifts to the plaintiff to prove he has suffered serious injury. Id.

## B.    Defendants' Burden

Defendants have met their burden through submission of the affirmation of Robert S. April, M.D. Def.'s Ex. D. Dr. April's independent neurological examination of Angel Mangual on May 12, 2003 consisted of a review of previous reports by various doctors, and Dr. April's own neurological examination. Id. Dr. April's cranial nerve examination revealed that "during range of motion of the neck," Mangual experienced spasms of pain in his right arm and shoulder. Def.'s Ex. D at 2. Mangual stated to Dr. April at that time that this type of movement "can induce such severe pain that he has to lie down." Id. Dr. April's motor examination revealed no neuromuscular atrophy, weakness or incoordination, and that Mangual's gait, station, toe and heel walking were normal. Id. Although there was pain on movement of the right shoulder, there was no limitation of movement of the shoulder, elbow, or wrist. Id. Dr. Aprils' mechanical testing revealed that bending forward at the waist from the standing position could be

accomplished to 80 degrees, straight leg raising was negative to 80 degrees bilaterally, and that the spine and paraspinal muscles were normal in the back. Id. With regard to Mangual's senses, Dr. April observed no abnormality for touch or pain over the limbs. Id. Dr. April concluded from his examination that Mangual "has some form of cervical spondylosis with limitation of movement, changes in reflexes, and pain . . . " that is "not related to the accident" in question. Def.'s Ex. D at 3.

### C. Plaintiffs' Burden

Plaintiffs now have the burden of raising a triable issue of fact that Angel Mangual sustained a serious injury as a result of the accident. Bent v. Jackson, 15 A.D.3d 46, 788 N.Y.S.2d 56, at 57 -58 (1st Dep't 2005) (citing Gaddy v. Eyler, 79 N.Y.2d 955, 582 N.Y.S.2d 990, 591 N.E.2d 1176 (1992). Plaintiffs must accomplish this through submission of competent medical evidence based upon objective medical findings and tests to support the claim of serious injury and to connect the condition to the accident. McNamara v. Wood, 797 N.Y.S.2d 606 (3rd Dep't 2005) (citations omitted). Read liberally, the Verified Complaint alleges serious injury under six categories of Insurance Law § 5102(d), namely the third, fourth, sixth, seventh, eighth, and ninth categories. Id. These categories are: (3) significant disfigurement; (4) a fracture; (6) permanent loss of use of a body organ, member, function or system; (7) permanent consequential limitation of use of a body organ or member; (8) significant limitation of use of a body function or system; (9) a medically determined injury or impairment of a non-permanent nature which prevents the injured person from performing substantially all of the material acts which constitute such person's usual and customary daily activities for not less than ninety days during the one hundred eighty days immediately following the occurrence of the injury or impairment. See N.Y. INS. LAW § 5102 (Consol. 2005).

Because the intent of the No-Fault Law is to weed out frivolous claims and limit recovery to significant injuries, courts require objective proof of plaintiff's injury; subjective complaints alone are not sufficient. Toure v. Avis Rent a Car Sys., 98 N.Y.2d 345, 350, 774 N.E.2d 1197, 746 N.Y.S.2d 865 (2002). Plaintiffs have submitted numerous reports, not one of which, however, is in admissible form. "It is well established that unsworn medical reports are not a form of admissible evidence capable of demonstrating a serious injury." Robinson v. United States, 2005 U.S. Dist. LEXIS 5383, 21-24 (S.D.N.Y. Mar. 30, 2005) (citing Molina v. United States, 301 F. Supp. 2d 317, 321 (S.D.N.Y. 2004); Friedman v. U-Haul Truck Rental, 216 A.D.2d 266, 627 N.Y.S.2d 765 (2d Dep't 1995)). Without evidence in admissible form, plaintiffs are unable to demonstrate that Mangual sustained a serious injury, and therefore unable to withstand defendants' motion for summary judgment. Nevertheless, this court is inclined to permit plaintiffs to resubmit the evidence in admissible form, because the evidence contained in several of the submitted reports, if submitted in admissible form, suffices to defeat summary judgment. See Nasrallah v. Oliveiri Helio De & Artichoke Cab Co., 1998 U.S. Dist. LEXIS 4173, 11-13 (S.D.N.Y. Apr. 2, 1998) ("the Court is unwilling to throw out plaintiffs' case based

upon what may very well be a good faith misunderstanding of plaintiffs' counsel as to what constitutes admissible, as opposed to sufficient, evidence to create a material fact in dispute."). The court will address the merits of defendants' motion; however, plaintiffs will be ordered below to submit admissible evidence in opposition to defendants' motion within four (4) weeks of the date of this order. If they do not, the court will sua sponte reconsider this decision and grant the motion for summary judgment based upon plaintiff's failure to comply with Fed. R. Civ. P. 56(e). See id.

### 1. Significant Disfigurement

Plaintiffs' Verified Complaint avers that plaintiff Mangual "has sustained serious injuries resulting in . . . a significant disfigurement . . . ." Pl.'s Ver. Compl. ¶ 2. A significant disfigurement constitutes a serious injury when a reasonable person viewing the injured party would regard the person as unattractive, objectionable, or as the subject of pity or scorn. Spevak v. Spevak, 213 A.D.2d 622, 622-23 (2d Dep't 1995). Plaintiffs do not address this category in their opposition papers, and the record is otherwise devoid of evidence that would create a triable issue of fact as to whether a reasonable person would regard Mr. Mangual, upon viewing him, as unattractive, objectionable, or as the subject of pity or scorn.[2]

Therefore, as to the first category of serious injury, defendants' claim is granted.

### 2. A Fracture

With respect to the fourth category, a fracture means a fracture of bone only, not cartilage, for example. See Catalan v. Empire Storage Warehouse, 213 A.D.2d 366 (2d Dep't 1995). Here also, aside from the bare allegation in the Verified Complaint, plaintiff has presented no evidence that plaintiff Mangual sustained a fracture.

Therefore, as to the second category of serious injury, defendants' claim is granted.

---

[2] See, e.g., Zulawski v. Zulawski, 170 A.D.2d 979 (4th Dep't 1991) (laceration of party's forehead requiring 20 stitches and left a two to two-and-one-half-inch scar, which was still noticeable 6 1/2 years after the accident and 2 months prior to the trial constituted significant disfigurement), Landsman v. Bunker, 142 A.D.2d 986 (4th Dep't 1988) (finding of no significant disfigurement overturned where the plaintiff sustained a laceration of her lower lip and chin, resulting in a depressed one and one quarter inch scar on her chin), Matula v. Clement, 132 A.D.2d 739 (3d Dep't 1987) (obvious 6-inch scar on the plaintiff's shoulder, resulting from a corrective surgery to relieve the pain from the injury sustained in the motor vehicle accident, constituted serious disfigurement).

6

### 3. Permanent Loss of Use of a Body Organ, Member, Function or System

The Verified Complaint alleges that Mangual "sustained serious injuries resulting in . . . permanent partial loss of use of a body organ . . . ." Ver. Compl. ¶ 2. The 'permanent loss' referenced in the sixth category, however, must be a "total loss of use . . . ." Scotto v. Moraldo, 2004 U.S. Dist. LEXIS 16117, at *17-18 (S.D.N.Y. Aug. 10, 2004) (citing Oberly v. Bangs Ambulance, Inc., 96 N.Y.2d 295, 297, 299, 727 N.Y.S.2d 378, 379, 381 (2001)). "This type of injury does not involve a partial loss of use." Id.

None of the evidence submitted by plaintiffs supports a finding that Angel Mangual has sustained a permanent loss of use of a body organ, member, function or system. The court will, however, address certain language located in plaintiffs' submissions in order to be clear. Mitchell M. Zeren, D.C. met with Angel Mangual on June 17, 2003. Def.'s Aff. Opp. Summ. J. Ex. H. Dr. Zeren reviewed various medical records and reports that Mangual had brought with him, and performed his own examinations, upon which he based his conclusion that there is a causal relation between Mangual's injuries and the accident of June 26, 1999. Id. Dr. Zeren also concluded, in language mirroring that in the Verified Complaint, that Mangual has suffered a "permanent partial disability."[3] Id. Abiola Familusi, M.D., upon physically examining Mangual on April 1, 2004, similarly opined that Mangual's "present condition indicates that he has a partial permanent impairment of the spine, which is causally connected to the MVA of June 26, 1999." Def.'s Aff. Opp. Summ. J. Ex. H. In Oberly, the Appellate Division, Third Department articulated that a "partial" loss could not be considered under the category "permanent loss of use," because this would result in an overlap between this category and the "significant limitation of use" category. Oberly, 96 N.Y.2d at 678-79, 271 A.D.2d at 137-38; see also Madden v. Jeong Yi Lee, 2002 U.S. Dist. LEXIS 20248, 13-14 (S.D.N.Y. Oct. 25, 2002). Indeed, "in cases involving injuries resulting in a partial loss of use of a body member," the Oberly court stated, "this Court has required that the limitation be a consequential one." Id. Thus, plaintiffs' allegations do not suffice to create a triable issue of fact as to whether Mangual sustained a serious injury under the sixth category of serious injury, and summary judgment as to this category of serious injury is hereby granted.

### 4. Permanent Consequential Limitation of Use of a Body Organ or Member; Significant Limitation of Use of a Body Function or System

With regard to the seventh and eighth categories, the New York Court of Appeals uses

---

[3] Additionally, although Dr. Zeren states at another point in his report that "[t]here is permanent impairment of the spine and musculoligamentous tissues," Id., he states at another point that Mangual has a "partial permanent impairment of the spine" and in the last paragraph of the report he states that Mangual's injuries have "resulted in a permanent partial disability." Id. Thus, Dr. Zeren found that Mangual suffered a permanent partial disability.

7

the terms "significant" and "consequential" interchangeably, defining them simply as "important." Toure v. Avis Rent a Car Sys., 98 N.Y.2d 345, 353, 774 N.E.2d 1197, 746 N.Y.S.2d 865 (2002) (quoting Dufel v. Green, 84 N.Y.2d 795, 798, 647 N.E.2d 105, 622 N.Y.S.2d 900 (1995)). The inquiry of whether the limitation of use is important "relates to medical significance and involves a comparative determination of the degree or qualitative nature of an injury based on the normal function, purpose and use of the body part." Id. "Significant" denotes something more than minor limitation of use; minor, mild or slight limitation is classified as insignificant within the meaning of the statute. Licari v Elliott, 57 N.Y.2d 230, 455 N.Y.S.2d 570, 441 N.E.2d 1088 (1982). In determining whether an injury constitutes a "significant limitation," duration of limitation must be considered, as well as extent or degree of limitation. Partlow v Meehan, 155 A.D. 2d 647, 548 N.Y.S.2d 239, 240 (2d Dep't 1989). Additionally, as evident from the language of the statute, the "permanent consequential limitation" category applies only to a body "organ" or "member," while the "significant limitation" category applies only to a body "function" or "system."

The reports of Dr. Zeren and Dr. Familusi, if submitted in admissible form, are sufficient to defeat summary judgment on the issue of whether plaintiff Angel Mangual has sustained a serious injury under the categories permanent consequential limitation of use of a body organ or member, and significant limitation of use of a body function or system. Dr. Zeren concluded that Angel Mangual has a "partial permanent impairment of the spine." Def.'s Aff. Opp. Summ. J. Ex. H, Report of Mitchell M. Zeren, D.C. Dr. Zeren's report and opinion are based on objective evidence consisting of his examination of Angel Mangual and several tests performed during the examination, including a straight leg raise test, cervical compression tests, and a Soto Hall test. Id. Dr. Zeren also reviewed previous studies and examinations performed by various physicians who treated Mangual, as well as diagnostic testing including three MRIs. Id. Dr. Zeren comparatively determined the quantitative nature of Mangual's injuries by comparing Mangual's average range of motion to a "Normal Average Range of Motion," concluding that Mangual experienced losses of approximately 30 to 50 percent in the "[p]assive cervical spine ranges of motion" and "passive lumbar range[s] of motion." Id. Dr. Zeren opined that Mangual has "chronic limitation of spinal motion and function," as well as "tissue damage including a disc herniation nerve root irritation" and "muscle and connective tissue damage." Id. Dr. Zeren reported that Mangual has been subject to episodes of "various aggravations related to his activities of daily routines of lifting, reading, sitting, work . . . ," and that he "has remained symptomatic despite the variety of modalities because of the anatomical derangements noted." Id.

Dr. Familusi reported that Mangual has "diminished cervical ranges of motion in bilateral rotation, flexion, and lateral bending," and that he has suffered a "loss of extension in the lumbar spine." Def.'s Aff. Opp. Summ. J. Ex. H, Report of Abiola Familusi, M.D., PM & R. Dr. Familusi performed, inter alia, a Spurling's test and a seated straight leg raise test. Id. Based on her examination, as well as review of Mangual's MRIs, Dr. Familusi opined that the injuries sustained were caused by the accident of June 26, 1999, and that the "trauma . . . has changed the mechanics of his spine." Id. Although Dr. Familusi did not offer a numerical loss of motion, she made a qualitative determination by correlating Mangual's injuries with his loss of motion, necessity to self-treat on a daily basis, and the "significant impact on his daily living." Id. Dr.

8

Familusi also notes that Mangual has "remained symptomatic for many years." Id.

This court finds that reasonable jurors could disagree as to whether Mangual sustained a serious injury under these two categories. Both doctors report that his injuries are permanent and comment on their significance. They offer objectively measured evidence in the form of their own examinations and reviews of prior examinations and diagnostic testing, which indicates the significance of Mangual's injuries by quantitatively measuring his loss of range of motion or qualitatively determining the nature of his injuries. If plaintiffs comply with the requirements set forth above regarding the submission of evidence in admissible form, they will have met their burden and will overcome defendants' motion for summary judgment. Summary judgment at this stage is therefore not appropriate.

### 5. Medically Determined Injury for 90/180 Days

This Court finds no triable issue of fact as to whether plaintiff Mangual was prevented from performing "substantially all of the material acts which constitute [his] usual and customary daily activities" for at least 90 out of the 180 days following the accident. It is repeatedly stated throughout the submitted reports that Mangual missed no work in the period immediately following the accident. Given that courts typically consider a plaintiff's employment history in order to determine whether an injury has had a substantial impact on the plaintiff's daily routine, this court must find that, as a matter of law, plaintiffs are incapable of meeting their burden of proof for this category. See Robinson, 2005 U.S. Dist. LEXIS at *21-24.

## IV. CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment is DENIED. Plaintiffs are ordered to resubmit their evidence in opposition to summary judgment to the Court in admissible form by October 6, 2005. If they do not, the court will sua sponte reconsider this decision and grant the motion for summary judgment based upon plaintiff's failure to comply with Fed. R. Civ. P. 56(e). The sufficiency of plaintiffs' evidence will be considered on submission, and a pretrial schedule, if in order, will be established thereafter.

Dated: September 8, 2005
New York, New York

_CONSTANCE BAKER MOTLEY_
CONSTANCE BAKER MOTLEY
United States District Judge